FILED
AUG - 2 2016
U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF AN APPLICATION OF THE UNITED STATES OF AMERICA FOR A WARRANT TO OBTAIN RECORDS, LOCATION INFORMATION, INCLUDING PRECISION LOCATION INFORMATION, CELL SITE INFORMATION, AND OTHER SIGNALING INFORMATION ASSOCIATED WITH THE CELLULAR TELEPHONE HAVING THE NUMBERS (314) 305-2628. | No. 4:16 MJ 6155 PLC<br><br>**FILED UNDER SEAL** |

## AFFIDAVIT

Nathan Hart, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration, duly appointed according to law and acting as such.

### Introduction

I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18 U.S.C. § 2510, in that, I am an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in Title 18 U.S.C. § 2516. I am is trained and employed as a federal law enforcement officer with statutory arrest authority charged with conducting criminal investigations of alleged violations of Title 21 of the United States Code.

I have been a DEA special agent since June 2009. Prior to that, I was employed as a police officer in the St. Louis, Missouri area for approximately twelve years. In 2005, I graduated from Lindenwood University with a Bachelor's Degree in Criminal Justice.

I am currently assigned to investigate illicit drug trafficking organizations operating in the

Eastern District of Missouri. As an agent with the DEA, I attended 19 weeks of training at the DEA Academy in Quantico, Virginia, where I became familiar with how controlled substances are consumed, manufactured, packaged, marketed, transported, and distributed. As a special agent of the DEA, and in my prior police experience, I have participated in numerous narcotic investigations of alleged criminal violations of state drug related offenses and/or of the Controlled Substances Act. In conducting my official duties, I have reviewed and authored numerous affidavits in support of criminal complaints, search warrants, and affidavits authorizing the interception of telephones.

The information contained within this affidavit is either personally known to me or was provided to me by other investigators and law enforcement officers involved in the investigation of the incidents described herein. I have also read reports and otherwise reviewed materials concerning this investigation.

The facts alleged in this affidavit come from my own investigation, my training and experience, and information obtained from other investigators and witnesses. As this affidavit is submitted for the limited purpose of establishing probable cause to locate and monitor the location of a cellular telephone as part of a criminal investigation, it does not set forth all of the my knowledge regarding this matter.

Upon information and belief, and as explained in greater detail below, the Sprint cellular telephone bearing number **(314) 305-2628** (hereinafter the "**subject cellular telephone**") has been used, and is presently being used, in connection with the commission of offenses involving ongoing violations of Title 21, United States Code, Section(s) 841(a)(1) and 846 (hereinafter referred to as "the subject offenses"), by **Eric Phillips**, and others known and unknown.

The present affidavit is being submitted in connection with an application of the Government for a warrant and order authorizing agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to obtain location information, including precision location information, cell site location information, and other signaling information, including pen register information, in an effort to locate and monitor the location of the **subject cellular telephone**.

Your affiant further states that there is probable cause to believe that the location information associated with the **subject cellular telephone** will lead to evidence of the aforementioned subject offenses as well as to the identification of individuals who are engaged in the commission of those criminal offense and related crimes.

## Investigation and Probable Cause

The user of the **subject cellular telephone** has been identified as Eric PHILLIPS. PHILLIPS was born on September 17, 1976. According to the Missouri Department of Revenue, PHILLIPS lives at 1589 Brenthaven Lane, Florissant, Missouri 63031. In checking PHILLIPS's criminal history, PHILLIPS has arrests for possession of a controlled substance-felony, assault law officer with physical injury, resisting/interfering with felony arrest, tampering with physical evidence, unlawful use of a weapon, assault 3rd degree, distribution delivery manufacturing a controlled substance, possession of marijuana, assault 1st degree, theft $500 more/less $25,000, armed criminal action, trafficking drugs 2nd degree, and traffic related offenses. Additionally, PHILLIPS has a federal conviction for cocaine possession with intent to distribute. According to the service provider, the **subject cellular telephone** is subscribed to Mike Wallace at PO Box 15955, Lenexa, KS 66285.

In November 2015, Drug Enforcement Administration ("DEA") agents assigned to the St.

3

Louis Division Group 37 initiated an investigation into the Eric PHILLIPS ("PHILLIPS") drug trafficking organization. During the investigation, agents learned that PHILLIPS is a cocaine distributor operating in the St. Louis, Missouri area. Additionally, PHILLIPS is obtaining multi-kilogram quantities of cocaine from an unnamed source of supply in Phoenix, Arizona and another unknown source of supply in Houston, Texas.

This investigation was initiated based on information received from a confidential source[2] ("CS-1") who was recruited after CS-1 was arrested in October 2015 in Arkansas while attempting to transport one kilogram of cocaine from Houston, Texas to St. Louis, Missouri for PHILLIPS in October 2015. CS-1 advised that PHILLIPS had paid CS-1 to travel to Houston, Texas to pick up the cocaine. At the time of the arrest, CS-1 provided PHILLIPS' phone number as (314) 305-1825. CS-1 showed agents several series of text messages between CS-1 and PHILLIPS in which CS-1 is giving PHILLIPS the location of CS-1. These texts occurred in and around May 17, 2015. Additionally, on May 12, 2015, PHILLIPS sent CS-1 a text instructing CS-1 as to CS-1's flight information from St. Louis, Missouri to Phoenix, Arizona. CS-1 advised that CS-1 transported 5-7 kilograms of cocaine for PHILLIPS on this trip[3]. CS-1 advised that CS-1 was informing PHILLIPS where CS-1 was located while CS-1 was transporting cocaine for PHILLIPS. CS-1 informed agents that PHILLIPS contacted CS-1 while CS-1 travelled to Phoenix, Arizona and Houston, Texas to give CS-1 direction as to where, when, and how to

---

2 Agents have determined that information provided by CS-1 is considered reliable. Information that CS-1 has provided has been able to be verified by CS-1 by conducting interviews of additional cooperating subjects, research of law enforcement data bases, and the analysis of information received from subpoena returns. Additionally, CS-1 has conducted several controlled purchases of drugs from other subjects that has led to several arrests and the seizures of drugs, money, and weapons.

3 In analysis of Southwest Airlines subpoena returns, agents found that CS-1 travelled from St. Louis, Missouri to Phoenix, Arizona on May 16, 2015 on Southwest Airlines.

receive the cocaine from the cocaine source of supply[4]. Additionally, CS-1 contacted PHILLIPS to inform PHILLIPS as to CS-1's location while CS-1 was transporting the cocaine to St. Louis, Missouri from Phoenix, Arizona and Houston, Texas[5].

In subsequent interviews with CS-1, CS-1 advised that PHILLIPS utilizes several cellular telephones to compartmentalize his drug trafficking operations. Additionally, PHILLIPS regularly switches telephones to avoid law enforcement detection. CS-1 advised that CS-1 has been transporting multi-kilogram quantities of cocaine for PHILLIPS from Houston, Texas and Phoenix, Arizona for the past two years. CS-1 estimated that CS-1 transported in excess of 80 kilograms of cocaine for PHILLIPS from Phoenix, Arizona and Texas to St. Louis, Missouri during this time period. CS-1 advised that PHILLIPS would give CS-1 money to travel from St. Louis, Missouri to either Phoenix, Arizona or Houston, Texas. CS-1 added that CS-1 usually flew to Phoenix, Arizona via Southwest Airlines. CS-1 stated that after CS-1 was given the cocaine in Phoenix, Arizona, CS-1 would travel back to St. Louis, Missouri via Greyhound Bus or via a rental vehicle paid for by PHILLIPS. CS-1 said that when CS-1 went to Houston, Texas to retrieve cocaine, CS-1 usually drove.

CS-1 informed agents that CS-1 was also instructed by PHILLIPS to travel to Phoenix, Arizona with other subjects so that CS-1 could show these subjects how to transport the cocaine from the source cities back to St. Louis, Missouri. CS-1 provided agents with several names of

---

4 Agents located at least 19 flights in which CS-1 flew from St. Louis, Missouri to source cities between April 24, 2014 and June 5, 2015. CS-1 advised that the purpose of each flight was for CS-1 to transport cocaine to St. Louis, Missouri for PHILLIPS. Additionally, CS-1 stated that CS-1 drove from St. Louis, Missouri to Texas several times between June 2015 and October 2015 however, agents are not able to corroborate this information through subpoena information at this time.

5 CS-1 has agreed to cooperate with this investigation in an effort to receive judicial consideration in outstanding cases against CS-1 in regards to arrests stemming from CS-1's involvement in the PHILLIPS drug trafficking organization.

5

subjects with whom CS-1 travelled to Phoenix, Arizona to pick up cocaine for PHILLIPS. One of these subjects was Dana Richard SMITH ("SMITH"). CS-1 added that many times when CS-1 travelled to Phoenix, Arizona or Houston, Texas for the purpose of transporting cocaine for PHILLIPS, PHILLIPS had also travelled to Houston or Phoenix and met with CS-1 to arrange for the transportation of the cocaine. CS-1 provided telephone number (314) 295-5824 as SMITH's telephone number.

Based on this information, agents issued a subpoena to Southwest Airlines requesting the travel records of PHILLIPS, CS-1, SMITH, and other unnamed subjects who have been identified as conspirators of this drug trafficking organization. In analyzing the Southwest Airlines' records, agents found that on at least three separate occasions, CS-1 travelled to Phoenix, Arizona with SMITH. The dates located are September 14, 2014, September 30, 2014, and March 11, 2015. CS-1 advised that on the trips that CS-1 and SMITH travelled to Phoenix, Arizona together, CS-1 and SMITH transported 4-6 kilograms of cocaine from Phoenix, Arizona to St. Louis, Missouri at the direction of PHILLIPS. CS-1 stated that PHILLIPS had directed CS-1 to travel with SMITH for the purpose of CS-1 showing SMITH how to transport the cocaine from the source cities to St. Louis, Missouri to avoid detection of law enforcement so that SMITH could transport cocaine at later dates independently of CS-1 for PHILLIPS. Additionally, PHILLIPS also travelled to Phoenix, Arizona on or about the same date as CS-1 and SMITH.

CS-1 advised that PHILLIPS also utilized Latrice STRONG to transport money from St. Louis, Missouri to the source cities as well as transporting cocaine back to St. Louis. Through information received from Southwest Airlines, agents learned that STRONG travelled with PHILLIPS and/or other identified couriers to source cities several times over the time period of the drug trafficking conspiracy.

CS-1 advised that following the arrest of PHILLIPS' brother, Frank PHILLIPS, in Phoenix, Arizona in June 2015, PHILLIPS stopped going to Phoenix, Arizona and began going to Houston, Texas to purchase cocaine. CS-1 advised that sometimes the couriers, including SMITH and STRONG, flew to Houston, Texas from St. Louis, Missouri however, the couriers drive as well as fly to Houston, Texas from St. Louis, Missouri.

On March 29, 2016, DEA agents working at the Lambert International Airport in St. Louis, Missouri detained Shavon BROWN ("BROWN") at the airport while she was waiting to board a flight from St. Louis, Missouri to Houston, Texas. During this encounter, agents seized $51,380 from BROWN's luggage. In checking toll data of BROWN's telephone as well as telephone number 314-203-4200 (another predecessor telephone utilized by PHILLIPS), agents discovered that BROWN and PHILLIPS were in contact with each other numerous times on the days surrounding this incident[6]. CS-1 informed agents that a few days after the money was taken from BROWN, PHILLIPS told CS-1 about the money being taken from BROWN. CS-1 advised that PHILLIPS had the paperwork that was given to BROWN by DEA agents when the money was taken. CS-1 added that PHILLIPS left the DEA paperwork at CS-1's house. CS-1 showed agents a photo of the DEA paperwork that PHILLIPS left at CS-1's house. In checking the toll information the telephone utilized by PHILLIPS, agents found that PHILLIPS was in the Houston, Texas area during the time of the seizure. Agents also found that the BROWN's plane ticket was purchased by STRONG.

In analyzing telephone toll information of telephones utilized by PHILLIPS as well as comparing these dates to flight records, agents identified several occasions when PHILLIPS was in the Houston, Texas area.

---

[6] CS-1 informed agents that PHILLIPS was utilizing telephone number (314) 203-4200.

In May 2016, CS-1 informed agents that PHILLIPS began utilizing telephone number (314) 226-3474. The service provider advised that this phone is subscribed to Brandi Smith at 4624 S. Kingshighway Blvd, St. Louis, Missouri 63109 and was activated on April 20, 2016.

On June 24, 2016, the U.S. Magistrate Judge David Noce of the Eastern District of Missouri signed an order authorizing the DEA to obtain and monitor precision location information of telephone number (314) 226-3474. While monitoring this information, agents learned that PHILLIPS had travelled to the Palace Inn 59 Crosstimber located at 7550 Eastex Freeway, Houston, Texas on July 17, 2016. On July 18, 2016, agents found that PHILLIPS departed the Palace Inn 59 Crosstimber and went to the area of Hobby International Airport in Houston, Texas. PHILLIPS then went to an address located in the 200 block of Burbank Street, Houston, Texas. PHILLIPS then drove to the area of Union Station, Dallas, Texas (Amtrak train station). PHILLIPS remained in this area for less than one hour before driving back to his residence in St. Louis, Missouri.

Based on this information, agents requested the Amtrak passenger manifest detailing subjects traveling from Dallas, Texas to St. Louis, Missouri. Agents found that Latrice STRONG had purchased a ticket during the same time frame as when PHILLIPS was near Union Station in Dallas, Texas. Agents recognized STRONG as a previously identified drug and money courier who worked for PHILLIPS in trafficking cocaine.

On July 19, 2016, agents approached STRONG as she entered the Amtrak train station located in downtown St. Louis, Missouri. Officer Michael Gilyon directed his department issued K-9 partner "Ace" to conduct a free-air sniff of the duffle bag that STRONG was carrying. "Ace" indicated to the presence of a controlled substance emitting from this bag. STRONG granted investigators permission to search this duffle bag as well as the purse that she was carrying. In

conducting this search, investigators located a kilogram of cocaine in STRONG's purse. STRONG was arrested and conveyed to the DEA office where she was booked and interviewed. During the interview, STRONG lied about whom she was transporting the cocaine for. During the booking process, agents found that PHILLIPS continually called STRONG's telephone.

Following the arrest of STRONG, agents learned that PHILLIPS discontinued using telephone number (314) 226-3474. On July 21, 2016, CS-1 contacted agents and informed them that PHILLIPS had transitioned telephones and was now using the **subject cellular telephone**. According to the service provider, the **subject cellular telephone** was activated on July 21, 2016 and is subscribed to Mike Wallace at PO Box 15955, Lenexa, KS 66285. A common call analysis by agents of the **subject cellular telephone** in comparison with the predecessor telephone has revealed that the **subject cellular telephone** is the replacement telephone for PHILLIPS. A further analysis has shown that PHILLIPS is utilizing the **subject cellular telephone** to contact several of the identified subjects involved in this ongoing investigation. Agents have found that drug traffickers, to include PHILLIPS, often utilize cellular telephones with fictitious names and addresses to avoid detection by law enforcement.

The investigation has clearly demonstrated that the **subject cellular telephone** is being used in connection with the commission of offenses involving ongoing violations of Title 21, United States Code, Section(s) 841(a)(1) and 846 (the subject offenses). It is critical that the investigative team be able to locate and monitor the movements of the **subject cellular telephone** thereby assisting in the identification of the co-conspirators and the seizure of narcotics. Your affiant believes that the requested authorization would be a valuable asset in achieving the overall goals of the investigation.

## Investigative Considerations and Techniques

Based on my knowledge, training, and experience, as well as information provided by investigators with specialized experience relating to cellular telephone technology, I am aware of the following facts and considerations:

A.  Wireless phone providers typically generate and retain certain transactional information about the use of each telephone call, voicemail, and text message on their system. Such information can include log files and messaging logs showing all activity on a particular account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or other addressing information associated with particular telephone calls, voicemail messages, and text or multimedia messages.

B.  Wireless phone providers also typically generate and retain information about the location in which a particular communication was transmitted or received. For example, when a cellular device is used to make or receive a call, text message or other communication, the wireless phone provider will typically generate and maintain a record of which cell tower(s) was/were used to process that contact. Wireless providers maintain information, including the corresponding cell towers (i.e., tower covering specific geographic areas), sectors (i.e., faces of the towers), and other signaling data as part of their regularly conducted business activities. Typically, wireless providers maintain records of the cell tower information associated with the beginning and end of a call.

C.  Because cellular devices generally attempt to communicate with the closest cell tower available, cell site location information from a wireless phone provider allows

10

investigators to identify an approximate geographic location from which a communication with a particular cellular device originated or was received.

    D.    Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers.

    E.    Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscriber's full name and address, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscriber's Social Security Number and date of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscriber. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing

11

digits dialed). The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

F.      Providers of cellular telephone service also typically have technical capabilities that allow them to collect and generate more precise location information than that provided by cell site location records. This information is sometimes referred to as E-911 phase II data, GPS data or latitude-longitude data. In the Eastern District of Missouri, such information is often referred to as "precision location information" or "PLI" data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by attempting to triangulate the device's signal using data from several of the provider's cell towers. Depending on the capabilities of the particular phone and provider, E-911 data can sometimes provide precise information related to the location of a cellular device.

In order to locate the **subject cellular telephone** and monitor the movements of the phone, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may need to employ one or more techniques described in this affidavit and in the application of the government. The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may seek a warrant to compel Sprint, any telecommunication service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications (herein incorporated by reference), and any other applicable service providers, to provide precision location information, including Global Position System information (if available), transactional records, including cell site location information, and pen register and trap-and-trace data.

None of the investigative techniques that may be employed as a result of the present application and affidavit require a physical intrusion into a private space or a physical trespass. Electronic surveillance techniques such as pen register and cell site location monitoring typically have not been limited to daytime use only. Furthermore, the criminal conduct being investigated is not limited to the daytime. Therefore, the fact that the present application requests a warrant based on probable cause should not limit the use of the requested investigative techniques to daytime use only. Accordingly, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, request the ability to employ these investigative techniques at any time, day or night.

The monitoring of the location of the **subject cellular telephone** by one of the methods described herein will begin within ten (10) days of the date of issuance of the requested Warrant and Order.

page 14

## Conclusion

Based on the above information, there is probable cause to believe that the **subject cellular telephone** is being used to promote and facilitate a conspiracy to distribute narcotics and the requested authorization would provide relevant evidence of the conspiracy. There is likewise probable cause to conclude that locating and monitoring the movements of the **subject cellular telephone** will lead to the relevant evidence concerning violations of Title 21, United States Code, Section(s) 841(a)(1) and 846.

_8-2-2016_
DATE

_[signature]_
NATHAN HART
Special Agent
Drug Enforcement Administration

Sworn to and subscribed before me this ___2___ day of August, 2016.

_Patricia L. Cohen_
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE
Eastern District of Missouri

## LIST OF TELECOMMUNICATION SERVICE PROVIDERS

Sprint
and

| | | | |
|---|---|---|---|
| 01 Communications | Empire Paging | MCI Worldcom | Smart Beep Paging |
| Access Line Communication | Ernest Communications | Metro PCS | Smart City Telecom |
| ACN Communications | Echelon Telecommunications | Metro Teleconnect | Socket Telecom |
| ACS | EZ Talk Communications | Mid-Atlantic | South Central Bell |
| Aero Communications, Inc. (IL) | FDN Communications | Midvale Telephone Exchange | Sprint |
| Afford A Phone | Fibernit Comm | Midwest Wireless | Sprint Spectrum, L.P. |
| Airvoice Wireless | Florida Cell Service | Millington Telephone | SRT Wireless |
| Alaska Communications | Florida Digital Network | MLM Telecommunications | Star Telephone Company |
| Alhambra-Grantfx Telephone | Focal Communications | Mobile Communications | Start Wireless |
| AmeriTel | Frontier Communications | Mound Bayou Telephone Co. | Sugar Land Telephone |
| AOL Corp. | Gabriel Comm | Mountain Bell | Sure West Telephone Company |
| Arch Communication | Galaxy Paging | Mpower Communications | Talk America |
| AT&T | Global Communications | Navigator | Tele Touch Comm |
| AT&T Mobility | Global Crossing | Telecommunications | Telecorp Comm |
| Bell Aliant | Global Eyes Communications | NE Nebraska Telephone | Telepak |
| Big River Telephone | Global Naps | Netlink Comm | Telistire |
| Birch Telecom | Global Rock Network | Network Services | Telnet Worldwide |
| Blackberry Corporation | Grafton Telephone Company | Neustar | Tex-Link Comm |
| Brivia Communications | Grand River | Neutral Tandem | Time Warner Cable |
| Broadview Networks | Grande Comm | Nex-Tech/United Wireless | T-Mobile |
| Broadvox Ltd. | Great Plains Telephone | Nexus Communications | Total Call International |
| Budget Prepay | Harrington Telephone | NII Comm | Tracfone Wireless |
| Bulls Eye Telecom | Harrisonville Telephone Co. | North Central Telephone | Trinity International |
| Cable Vision | Heartland Communications | North State Comm | Triton PCS Company |
| Call Wave | Hickory Telephone | Northcoast Communications | U-Mobile |
| Cbeyond Inc. | Houston Cellular Telephone | Novacom | Unicel Cellular |
| CCPR Services | Huxley Communications | Ntera | United On-Line |
| Cellco Partnership, | iBasis | N-Teleos Wireless | United States Cellular Corp. |
| d/b/a Verizon Wireless | IDT Corporation | NTS Communications | United Telephone of MO |
| Cellular One | Illinois Consolidated | Oklahoma City SMSA | US Cellular |
| Cellular South | Communications | ONSTAR | US Communications |
| Centennial Wireless | Illinois Valley Cellular | Optel Texas Telecom | US LEC |
| CenturyLink | Insight Phone | Orion Electronics | US Link |
| Champaign Cellular | Integra | PacBell | US West Communications |
| Charter Communications | Iowa Wireless | PacWest Telecom | USA Mobility |
| Chickasaw Telephone | IQ Telecom | PAETEC Communications | VarTec Telecommunications |
| Choctaw Telephone Company | J2 Global Communications | Page Plus Communications | Verisign |
| Choice Net Comm. | Leap Wireless International | Page Mart, Inc. | Verizon Telephone Company |
| Cimco Comm | Level 3 Communications | Page Net Paging | Verizon Wireless |
| Cincinnati Bell | Level One | Panhandle Telephone | Viaero Wireless |
| Cinergy Communications | Local Links Communications | Peerless Network | Virgin Mobile |
| Citizens Utilities | Locus Communications | Pineland Telephone | Vonage Holdings |
| Clear World Communication | Logix Communications | PhoneTech | Wabash Telephone |
| Com-Cast Cable Comm. | Longlines Wireless | PhoneTel | Weblink Wireless |
| Comm South Companies | Los Angeles Cellular | Preferred Telephone | Western Wireless |
| Commercial Communications | Madison River | Priority Communications | Westlink Communications |
| Consolidated Communications | Communications | Puretalk | Windstream Communications |
| Conversent Communications | Madison/Macoupin Telephone | RCN Telecom | WinStar Communications |
| Cox Communications | Company | RNK Telecom | Wirefly |
| Cricket Wireless | Mankato Citizens Telephone | QWEST Communications | WISPNET, LLC |
| Custer Telephone Cooperative | Map Mobile Comm | Sage Telecom | World Comm |
| DBS Communications | Marathon Comm | SE All-Tel Comm | XO Communications |
| Delta Communications | Mark Twain Rural | Seren Innovations | Xspedius |
| Detroit Cellular | Matrix Telecom, Inc. | Sigecom LLC | Yakdin Valley Telephone |
| Dobson Cellular | Max-Tel Communications | Sky Tel Paging | YMAX Communications |
| Egyptian Telephone | McCleod USA | | Ztel Communications |
| Electric Lightwave, Inc. | | | |

ATTACHMENT 1, TO INCLUDE PROVIDERS OF ANY TYPE OF WIRE AND/OR
ELECTRONIC COMMUNICATIONS                                    Last Update: 08/17/2015